Widercrantz v Amchem Prods., Inc. (2025 NY Slip Op 51913(U))

[*1]

Widercrantz v Amchem Prods., Inc.

2025 NY Slip Op 51913(U)

Decided on December 2, 2025

Supreme Court, New York County

Schumacher, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 2, 2025
Supreme Court, New York County

Jon Widercrantz, Plaintiff,

against
Amchem Products, Inc. et al., Defendants.

Index No. 190118/2024

Weitz & Luxenberg, P.C. (Benjamin A. Darche, Patti L. Burshtyn, Jason P. Weinstein, Brittany A. Russell, and Pierre A. Ratzki of counsel) for plaintiff.
Manning Gross + Massenburg LLP (David J. Fisher, Nikkia R. Pew, and Robert Creighton of counsel) for defendant American Biltrite, Inc.

Eric Schumacher, J.

NYSCEF doc nos. 215-229, 455-458, 476-482, and 483 are read on this motion for summary judgment.
Upon the foregoing documents and oral argument on November 5, 2025, movant, American Biltrite, Inc.'s motion for summary judgment is denied.
BACKGROUND
Plaintiff, Mr. Widercrantz, diagnosed with mesothelioma, brought this personal injury action alleging that his injury was a result of asbestos exposure from various defendants' products. This motion concerns plaintiff's alleged personal and bystander asbestos exposure from working as a laborer with American Biltrite, Inc.'s (ABI) Amtico floor tiles from 1974-1977, and mid to late 1980s. (See NYSCEF doc no. 219, plaintiff's deposition tr at 166:14-166:23, 168, 170, 285:2-285:7, 287:4-287:10, 1091:8-1093:6, 1098:2-1099:25.) Work on these tiles entailed demolition/removal as well as installation, which involved, among other things, cutting, snapping, and sanding, as well as sweeping/cleaning of the dust generated from such work. (See id. at 167:12-167:23, 1098-1099, and 1110.) Plaintiff testified that the tiles would sometimes have "asbestos" written on the bottom, and ABI affirms that some of their floor tiles during 1961-1985 were manufactured containing asbestos. (See id. at 168 and 1092; see NYSCEF doc no. 221 at 7 and 41).
ABI has moved pursuant to CPLR 3212 to dismiss plaintiffs' complaint, and all cross [*2]claims asserted against it. ABI, by relying on its experts, asserts that Amtico floor tiles did not and could not have caused plaintiff's mesothelioma as any dose of asbestos from Amtico tiles would have been indistinguishable from ambient air exposure levels.
DISCUSSION
"Summary judgment is a drastic remedy, to be granted only where the moving party has 'tender[ed] sufficient evidence to demonstrate the absence of any material issues of fact' (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]) and then only if, upon the moving party's meeting of this burden, the non-moving party fails 'to establish the existence of material issues of fact which require a trial of the action' (id.). The moving party's '[f]ailure to make [a] prima facie showing [of entitlement to summary judgment] requires a denial of the motion, regardless of the sufficiency of the opposing papers' (id.)"(Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012] [emphasis omitted].)
On a motion for summary judgment, a defendant has to ". . . unequivocally establish that its product could not have contributed to the causation of plaintiff's injury. . . ." (Reid v Georgia-Pacific Corp., 212 AD2d 462, 463 [1st Dept 1995].) To prove causation, one "must show not only exposure to the toxin and that the toxin is capable of causing the particular illness alleged, i.e., general causation, but also that plaintiff was exposed to sufficient levels of the toxin to cause the illness, i.e., specific causation" (Fraser v 301-52 Townhouse Corp., 57 AD3d 416, 419 [1st Dept 2008]; see also Nemeth v Brenntag N. Am., 38 NY3d 336, 342-343 [2022], citing Parker v Mobil Oil Corp., 7 NY3d 434, 448 [2006]). Accordingly, a defendant may show prima facie entitlement to summary judgment by either establishing an absence of general or specific causation (see Dyer v Amchem Prods. Inc., 207 AD3d 408, 410 [1st Dept 2022]); Gushue v Estate of Norman Levy, 118 AD3d 415, 415 [1st Dept 2014]).
"On a motion for summary judgment, facts must be viewed 'in the light most favorable to the non-moving party'" (see Vega at 503 [internal citations omitted]; see also Matter of NY City Asbestos Litig., 33 NY3d 20, 25-26 [2019]). "The function of a court in reviewing such a motion is issue finding, not issue determination, and if any genuine issue of material fact is found to exist, summary judgment must be denied" (see People v Greenberg, 95 AD3d 474, 483 [1st Dept 2012] [internal citation omitted]).
I. General Causation:
ABI, relying on Parker, states that to prove general causation, one has to show ". . . the relationship, if any, between exposure to . . . [the product] containing . . . [the toxin] as a component and . . . [the disease]." (see Parker at 449-450). As in Parker, here, "the relationship between exposure to . . . [asbestos] and the risk of developing . . . [mesothelioma] [is] — an association that is not in dispute." (Parker at 449). Neither is it disputed that non-friable products, such as floor tiles, release chrysotile asbestos fibers when disturbed by being cut, scored, snapped, sanded, etc. ABI instead through its experts' opinions asserts that even if the floor tiles which contain asbestos in a tightly bound matrix are disturbed, the amount of asbestos fibers generally released through the process is insubstantial, below the Occupation Safety and Health Administration's (OSHA) permissible exposure limit (PEL), and indistinguishable from ambient air exposures (see NYSCEF doc no. 220, defendant's exhibit B at 7, 11, and 39). ABI's experts primarily rely on simulation studies done on Amtico floor tiles, as well as a meta-analysis study (Perez et al. [2018]) on asbestos exposure levels from various flooring activities to establish an absence of general causation (see generally NYSCEF doc no. 220, defendant's [*3]exhibit B).
The findings of ABI's experts are too restrictive to prove a lack of general causation. An individual may be exposed to asbestos while working with and around floor tiles under conditions that ABI's experts failed to consider. Indeed, even the Perez et al. (2018) article cited by ABI's experts, admittedly excluded certain studies on work on floor tiles due to aggressive work practices (see NYSCEF doc no. 478 at 14). These excluded studies had found exposure to asbestos through sanding floor tiles to exceed permissible OSHA PEL levels and ambient exposure levels (see NYSCEF doc no. 220 at 7, 11, and 39; NYSCEF doc no. 478 at 14). At the very least, this creates issues of fact as to whether there are instances where exposure to asbestos from floor tiles can surpass the very threshold limits that movant's experts rely on to disprove causation. As such, ABI has failed to meet its prima facie burden as to general causation argument.[FN1]

II. Specific Causation:
"Nemeth holds that simply showing that exposures to a toxin were excessive or far more [than] a certain threshold . . . is not enough [Nemeth, 38 NY3d at 343]." (Dyer at 413 [internal quotations omitted].) Further, "standards promulgated by regulatory agencies as protective measures are inadequate to demonstrate legal causation." (Parker at 450). Instead, one must make a "reliable correlation between the presence of asbestos fiber concentrations found in the studies and how much inhaled asbestos would have caused [mesothelioma] generally and [plaintiff's mesothelioma] in particular" (Dyer at 413). There can be several ways an expert can demonstrate this.
"For instance . . . the intensity of exposure . . . may be more important than a cumulative dose for determining the risk of developing leukemia. Moreover, exposure can be estimated through the use of mathematical modeling by taking a plaintiff's work history into account to estimate the exposure to a toxin. It is also possible that more qualitative means could be used to express a plaintiff's exposure. Comparison to the exposure levels of subjects of other studies could be helpful provided that the expert made a specific comparison sufficient to show how the plaintiff's exposure level related to those of the other subjects."(Parker at 449).
ABI's expert certified industrial hygienists, Mr. Spencer and Mr. Plisko, provide that OSHA's PEL to asbestos based on an eight-hour time-weighted average (TWA) is 0.1 fibers per cubic centimeter (f/cc) (see NYSCEF doc no. 220 at 13). Further, the permissible short term exposure limit within a 30-minute period is 1.0 f/cc (see id.). Mr. Spencer and Mr. Plisko have estimated that plaintiff's highest cumulative lifetime exposure from Amtico floor tiles would [*4]have been 0.0050 f/cc-years (see id. at 34).[FN2]
Mr. Spencer and Mr. Plisko concluded that plaintiff's lifetime personal and bystander exposure would have been "well below lifetime cumulative exposures from working at the strictest regulatory criteria stipulated by OSHA, WHO and EPA" and "any potential exposure would have been comparable to ambient concentration levels" (see id. at 39).[FN3]

It is unclear from the record whether the calculation by ABI's experts accounted for plaintiff's exposure from doing tile installation work with and around others during 1974-1977. While plaintiff did not use the term "bystander exposure" for that period, plaintiff indeed testified that he installed tiles personally, that he was a "helper" for installing floor tiles at that time, or that he was on the jobsite where the tiles were being installed (see NYSCEF doc no. 166:14-166:23, 1091:8-1093:6, and 1098:2-1099:25). ABI's experts estimated the number of days plaintiff spent "installing" Amtico tiles during this period but did not distinguish between personal or bystander exposure, as they have done in the 1980s period (see NYSCEF doc no. 220 at 31-32). Assuming that, despite this, ABI has met its initial summary judgment burden with the offered calculation as it had in Dyer, the burden then shifts to the plaintiff to raise genuine issues of material fact as to specific causation.
In opposition, plaintiff has raised genuine issues of material fact as to specific causation. Dr. Ginsburg, plaintiff's expert surgeon opines that epidemiological studies indicate that the odds ratio of developing mesothelioma from asbestos exposure remains significantly elevated even at exposures under 0.1 f/cc-years (see NYSCEF doc no. 457 at 8-9). A significant risk thus remains when exposure exceeds 0.1 f/cc-years (see NYSCEF doc no. 526, Nov. 5, 2025 oral argument tr at 39:3-41:3]). Mr. Garza, plaintiff's certified industrial hygienist cites to several relevant and comparable simulation studies that have analyzed personal and bystander exposure to asbestos from removal, sanding, installation, and clean-up of floor tiles. Dr. Ginsburg relies on these studies, as well as plaintiff's exposure testimony to opine that plaintiff's exposure would have been over the levels that have shown to be causative of mesothelioma in epidemiological literature (see NYSCEF doc no. 457 at 18-19). In so doing, Dr. Ginsburg notes that epidemiological studies do not "inform with respect to intensity and duration of individual [*5]exposure" (see NYSCEF doc no. 457 at 9). He asserts that "intensity and duration of an exposure is more informative for individual risk of disease than time weighted averages or cumulative exposures, which are most useful for population studies and their risks" (see id.). Dr. Ginsburg maintains that individuals "have specific but limited defense mechanisms against inhaled foreign bodies . . . . that can be overwhelmed and are not easily replaced. . . . and may not be responsive to an acute inhalation event . . ." (see id. at 9-10). Dr. Ginsburg opines that "non-ambient exposures result in asbestos fibers having a far greater ability, in some cases by many orders of magnitude, to overcome these defense mechanisms and reach lung and mesothelial cells" (see id.).
Dr. Ginsburg states that 0.0001 f/cc is the average ambient air exposure to asbestos as per the U.S. Environmental Protection Agency (see id. at 10). Dr. Ginsburg then relies on Mr. Garza's report to analyze plaintiff's "acute inhalation events". For instance, the cited Longo et al. (2002) simulation study on scoring, snapping and sanding of the floor tiles for under 30 minutes, reported level of airborne asbestos fibers of 0.27 f/cc by phase contrast microscopy (PCM) (see NYSCEF doc no. 226, defendant's exhibit H at 90). Similarly, the Materials Analytical Services, Inc. (2002) study found peak exposure of airborne asbestos to be 0.39 f/cc from similar work (see NYSCEF doc no. 457 at 11). Dr. Ginsburg opines that with a 0.39 f/cc peak exposure, an individual would be exposed to "3900 times ambient exposure, resulting in an individual breathing in 2340 asbestos fibers per minute [as opposed to ambient, 0.5 fiber per minute]." (See id. at 14.) Dr. Ginsburg concludes that such exposure would have been sufficient to overcome the body's defense mechanisms and reach plaintiff's lung and pleural cells (see id. at 18-19). Unlike in Dyer, here, Dr. Ginsburg provides "how much higher than the ambient levels the toxin concentration needs to be to trigger disease" (see Dyer at 413). Dr. Ginsburg also relies on case reports of asbestos floor tile workers who developed mesothelioma and pleural calcifications to support his causation opinion (see NYSCEF doc no. 457 at 11). Dr. Ginsburg uses these studies to demonstrate that plaintiff's exposure to asbestos from Amtico tiles was above ambient, and causative levels.
Plaintiff offers that its experts' opinions are similar to what was accepted by the Appellate Division, First Department in Sason v Dykes Lbr. Co., Inc., 221 AD3d 491 (1st Dept 2023). This court agrees. Here, as in Sason, Dr. Ginsburg, while relying on, among other things, Mr. Garza's report, has opined that plaintiff's cumulative exposure exceeded the known causative levels of mesothelioma. In Sason, the relevant exposure was from putty products. There, the comparable exposure cited in Dr. Ginsburg's product specific opinion ranged from 16.9 f/cc-59.0 f/cc (see Sason v Dykes Lumber Company, Inc. et al., appellate case no. 2023-03840, NYSCEF doc no. 260 at 324). While the range of exposure from tiles in this case is a fraction of the range provided in the briefs filed in Sason, the opinion of Dr. Ginsburg on causation remains the same. In the absence of any authority that sets forth a quantitative baseline for exposure, this court finds that genuine issues of material fact remain in light of Dr. Ginsburg's qualitative analysis of plaintiff's "intense" exposure that is supported by the comparable quantitative "f/cc" exposure ranges cited in Mr. Garza's report.
Plaintiff's testimony, and its experts' reports, "taken together, articulate[s] 'a scientific expression of [plaintiff]'s exposure level' [Parker v Mobil Oil Corp., 7 NY3d 434, 449, 857 N.E.2d 1114, 824 N.Y.S.2d 584 (2006)] and [meet] the standard for establishing specific causation set forth in Nemeth [see e.g. Sason v Dykes Lbr. Co., Inc., 221 AD3d 491, 492, 199 N.Y.S.3d 56 (1st Dept 2023)]." (Matter of NY City Asbestos Litig., 224 AD3d 597, 598 [1st [*6]Dept 2024] [McWilliams].) Under the circumstances, plaintiff has sufficiently raised genuine issues of material fact as to specific causation.
The court has considered all remaining arguments raised by ABI and finds them unavailing.
CONCLUSION
Accordingly, it is
ORDERED that the branch of ABI's motion pursuant to CPLR 3212 for summary judgment to dismiss all cross claims asserted against it is granted; and it is further
ORDERED that the branch of ABI's motion pursuant to CPLR 3212 for summary judgment to dismiss all claims asserted against it is denied; and it is further
ORDERED that within 5 days of entry, plaintiff shall serve a copy of this order with the notice of entry on ABI.
The foregoing, together with the November 5, 2025 oral argument transcript, constitutes the decision and order of the court.
DATE 12/2/2025
ERIC SCHUMACHER, J.S.C.

Footnotes

Footnote 1:To the extent ABI asserts through its experts that asbestos exposure limited to chrysotile fibers, as is the case with floor tiles, is incapable of causing mesothelioma (see NYSCEF doc no. 223, defendant's exhibit E at 24-25), plaintiff in opposition has raised genuine issues of material fact as to chrysotile, including tremolite-free chrysotile, independently being found to cause mesothelioma (see NYSCEF doc no. 457, plaintiff's exhibit 1 at 7).

Footnote 2:ABI's experts explain that f/cc-years is "Exposure Concentration (f/cc) x Task Duration (days)/240 workdays per year x total years." (See NYSCEF doc no. 220 at 32.) ABI's experts relied on plaintiff's testimony to factor in "task duration" for their calculations. They evaluated plaintiff's testimony in two periods. One was "Estimated Number of Equivalent Days Removing, Sanding, & Installing Amtico Floor Tile from 1974 to 1977", and the other was "Estimated Number of Equivalent Days Sanding & Bystander Exposure to Others Installing Amtico Floor Tile from 1984 to 1985" (see id. at 31-32) (emphasis added). Mr. Spencer and Mr. Plisko arrived at a final task duration for their exposure calculations. The cumulative task days was 37.5 days for personal installation, 37.5 days for bystander installation, 50 days for removal, and 5 days for sanding the edge of cut tiles (see id. at 31-32). Mr. Spencer and Mr. Plisko also use comparable simulation studies for the "f/cc" range in their calculations. 

Footnote 3:Mr. Spencer and Mr. Plisko rely on, among other things, ambient fiber measurements reported by the ATSDR to compare it to plaintiff's lifetime exposure that they calculated (see NYSCEF doc no. 220 at 30, and 34).